# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAVON ORTEGA,<br><br>         Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>         Defendant. | Case No. 1:12-cv-01030-AWI-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S SOCIAL SECURITY APPEAL BE GRANTED IN PART AND DENIED IN PART AND THAT THIS ACTION BE REMANDED FOR FURTHER ADMINISTRATIVE PROCEEDINGS<br><br>OBJECTIONS DUE WITHIN FOURTEEN (14) DAYS |

Plaintiff Lavon Ortega filed this action seeking judicial review of the final decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner") denying Plaintiff's application for benefits under the Social Security Act. (ECF No. 1.) This matter was submitted to the undersigned magistrate judge for findings and recommendations pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 303.

Plaintiff applied for disability benefits due to her fibromyalgia, depression, sleep disorder and possible arthritis. For the reasons set forth below, the undersigned recommends that Plaintiff's Social Security appeal be granted in part and denied in part and that this action be remanded for further administrative proceedings.

/ / /

/ / /

# I.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff filed her application for benefits under the Social Security Act on June 30, 2008. (AR 12.) Plaintiff alleged a disability onset date of November 1, 2005. (AR 12.) Plaintiff's application was denied initially on October 30, 2008 then denied upon reconsideration on January 22, 2009. (AR 12.) On March 17, 2009, Plaintiff filed a request for a hearing. (AR 12.)

On June 18, 2010, a hearing took place before Administrative Law Judge Teresa L. Hoskins Hart ("the ALJ"). (AR 12, 24.) Plaintiff was represented by an attorney at the hearing. (AR 12.) Thomas C. Dachelet testified at the hearing as an impartial vocational expert. (AR 12.) On August 25, 2010, the ALJ issued her written determination that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 12-24.) The Appeals Council denied Plaintiff's request for review. (AR 1, 4.)

### A. Hearing Testimony

Plaintiff previously worked in clerical jobs with a bank. (AR 42.) Plaintiff also worked part time in retail. (AR 43.) Plaintiff also worked at a university as a student loan specialist. (AR 44-45.) Plaintiff currently works part time at the church she attends for two to four hours per week. (AR 46.) Plaintiff helps with the church's deposits and gets paid on an hourly basis. (AR 46-47.)

On a typical day, Plaintiff wakes up around 9:30 a.m., but depending on her pain levels may stay awake in bed until noon. (AR 49.) Plaintiff reported that approximately three days out of the week she will stay completely in bed. (AR 56.) Plaintiff lets the dogs out, feeds the dogs, makes coffee, watches TV, sometimes takes a shower and tries to empty out the dishwasher. (AR 49.) Plaintiff used to be involved in community activities such as mission trips, playing softball, wally ball, event coordination, decorating and idea planning. (AR 49.) Plaintiff used to be involved in a women's study group with her church but stopped earlier in the year. (AR 50.)

/ / /

---

[1] Citations to the Social Security Administrative Transcript will be designated as "AR" (administrative record). Page numbers will refer to the page numbers as stamped and indexed in the lodged transcript. (See ECF No. 13.)

2

1     Plaintiff has three adult children.  (AR 51.)  Plaintiff lives with her husband and two dogs
2  in a house.  (AR 51.)  If Plaintiff leaves the house for activities, it is for a very short period of
3  time because she wants to lie down.  (AR 52.)  Plaintiff sometimes runs errands with her husband
4  and cousin.  (AR 52.)  Plaintiff can drive a car.  (AR 52.)  Plaintiff occasionally runs out on
5  errands by herself, such as going to the store.  (AR 52-53.)  Plaintiff goes to a movie with her
6  husband every once in a while.  (AR 52-53.)

7     Plaintiff stated that she cannot work because she is in constant pain and constantly
8  fatigued.  (AR 53.)  Plaintiff stated that when she drove to work she often had to pull over and
9  rest due to pain in her right shoulder.  (AR 53.)  When she worked on a computer or did anything
10 using her right hand she experienced pain as well.  (AR 53.)  Plaintiff also experiences
11 inconsistent pain in her left side.  (AR 57.)

12    Plaintiff attended school until the eighth grade and received a GED through adult school.
13 (AR 53.)

14    Plaintiff has a TENS machine with patches going from her wrist to her shoulder.  (AR 55.)
15 Plaintiff reported that the patches do not help, but she started wearing them when she went to
16 creative therapy where they told her to wear them as much as she can to see if she gets relief.
17 (AR 54-55.)  Plaintiff is no longer going to creative therapy, but reported that she got relief during
18 the time she was there.  (AR 55.)  Plaintiff stopped going because she could not afford it.  (AR
19 56.)  Plaintiff continues to do some of the exercises at home.  (AR 56.)

20    Plaintiff sometimes needs help taking care of her personal needs.  (AR 57.)  Plaintiff
21 sometimes needs help in the shower or getting out of bed when her joints feel stiff.  (AR 57-58.)

22    Plaintiff reported that she can lift four pounds for a few minutes.  (AR 60.)  Plaintiff can
23 sit for fifteen to twenty minutes before she has to stand up.  (AR 60.)  Plaintiff can walk for
24 fifteen minutes before needing a break.  (AR 61.)  Plaintiff can stand in one spot for ten minutes
25 at a time.  (AR 61.)

26    Plaintiff's husband, Christopher Ortega, also testified at the hearing.  (AR 63-66.)  Mr.
27 Ortega has been married to Plaintiff for six years.  (AR 63.)  Mr. Ortega testified that he observed
28 Plaintiff in "[a] lot of pain," in "a lot of fatigue," and depressed.  (AR 63.)  Mr. Ortega stated that

Plaintiff used to be able to work, perform house work, perform yard work and was generally active, but is no longer capable of doing those things. (AR 64.) Mr. Ortega helps Plaintiff get dressed, helps bathe her, and helps her get out of bed. (AR 64.) When Plaintiff cannot get out of bed, Mr. Ortega lifts her up and supports her while she goes to the bathroom or walks around the house. (AR 64-65.) Within the past year, Mr. Ortega has stayed home from work to help Plaintiff approximately twenty times. (AR 65.)

Thomas C. Dachelet testified as a vocational expert at the hearing (hereinafter referred to as "the VE"). (AR 66-73.) Mr. Dachelet classified Plaintiff's past relevant work as accounts receivable (216.482-010), clerk (209.562-010), loan officer (186.267-018) and teller (211.382-010).

The VE was given the following first hypothetical limitations:
- limited to light exertion;
- No more than frequent pushing and pulling with the upper extremities;
- No more than occasional climbing of ladders, ropes or scaffolds;
- No more than occasional stooping or crouching;
- Can frequently perform all other postural functions;
- No more than frequent simple grasping and handling required for light work;
- Moderate difficulties with complex or detailed instructions; and
- Moderate difficulties carrying out detailed or complex tasks.

(AR 69.) The VE testified that a person with such hypothetical limitations would be unable to perform Plaintiff's past relevant work. (AR 69.) However, the VE further testified that such a person could generally perform work within the category of sedentary, light and unskilled work, though a few particular jobs within this category may be precluded by the hypothetical limitations. (AR 70.)

The ALJ then provided the VE with a second hypothetical which was identical to the first, but with the pushing and pulling limitation changed from no more than frequent to no more than occasional. (AR 71.) The VE testified that the response under the modified second hypothetical would be substantially similar to his response under the first hypothetical. (AR 71.)

The ALJ provided the VE with a third hypothetical which was identical to the second, but with the added limitation of moderate difficulties with maintaining attention and concentration such that they were off task for twenty percent of the work day. (AR 72.) The VE testified that a person with such hypothetical limitations would not be capable of performing any work. (AR 72.)

Plaintiff's attorney provided the VE with a fourth hypothetical which was identical to the second, but with the grasping and handling limitation changed from no more than frequent to no more than occasional. (AR 73.) The VE testified that this change "would close the world of work." (AR 73.)

### B. Plaintiff's Medical Records

Plaintiff's medical record includes treatment records from Jimenez Physical Therapy (AR 260-274), treatment records from Fresno Community Regional Medical Center (AR 275-305, 593-601), treatment records from Fresno Heart & Surgical Hospital (AR 306-311), records from treating physician Dr. Pamela Kammen, MD (AR 312-401, 422-431), treatment records from Stanford University Medical Center (AR 402-414), a psychiatric evaluation from examining physician Dr. Ekram Michiel, MD (AR 415-421), a medical evaluation from examining physician Dr. Steven Stoltz, MD (AR 432-440), physical consultative evaluations from non-treating and non-examining physician Dr. Sadda Reddy MD (AR 441-449), mental consultative evaluations from non-treating and non-examining physician Dr. R. Paxton MD (AR 450-463), a consultative evaluation from non-treating and non-examining physicians Dr. E. Murillo MD and Dr. George G. Spellman, Jr., M.D. (AR 464-465), treatment records from Creative Therapeutics (AR 466-494), and records from treating physician Dr. Surinder P. Dhillon (AR 495-592). The relevant portions of Plaintiff's medical records are discussed in more detail below with the Court's analysis.

### C. The ALJ's Findings

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2012;

5

- Plaintiff engaged in substantial gainful activity during the following periods: November 2005 through December 2005;
- There has been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity;
- Plaintiff has the following severe impairments: depression, fibromyalgia, sleep disorder and possible arthritis;
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;
- Plaintiff has the residual functional capacity to perform light work, but can no more than frequently push or pull with her upper extremities, can no more than occasionally climb ladders, ropes or scaffolds, can no more than occasionally stoop or crouch, can perform all other postural functions frequently, can no more than frequently grip or grasp, has moderate difficulty in performing detailed or complex tasks, and can perform simple and repetitive tasks characteristic of unskilled work;
- Plaintiff is unable to perform any past relevant work;
- Plaintiff is capable of performing jobs that exist in significant numbers in the national economy; and
- Plaintiff has not been under a disability from November 1, 2005 through the date of the ALJ's decision.

(AR 12-24.)

## II.

## LEGAL STANDARDS FOR JUDICIAL REVIEW OF SOCIAL SECURITY DETERMINATIONS

An individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). The Court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v.

6

1  Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla,
2  but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal
3  quotations and citations omitted). "Substantial evidence is 'such relevant evidence as a
4  reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Richardson v.
5  Perales, 402 U.S. 389, 401 (1971)). "[A] reviewing court must consider the entire record as a
6  whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill,
7  698 F.3d at 1159 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).
8  However, it is not this Court's function to second guess the ALJ's conclusions and substitute the
9  Court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)
10 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's
11 conclusion that must be upheld.")

### III.

### DISCUSSION AND ANALYSIS

Plaintiff raises four arguments in her brief: (1) that the ALJ failed to specify the time periods of substantial gainful activity, (2) that the ALJ gave insufficient reasons to reject the medical opinions of Dr. Surinder P. Dhillon, (3) that the ALJ gave insufficient reasons to reject the medical opinions of Dr. Steven Stoltz and (4) that the ALJ erred by relying on the Medical Vocational Guidelines (also known as "the Grids").

**A.  The ALJ Did Not Err in Her Findings Pertaining to Substantial Gainful Activity**

Plaintiff argues that the ALJ erred when she "did not specify the time periods of [substantial gainful activity]" and that the ALJ "tried to use off and on work activities to discredit Plaintiff." (Pl.'s Opening Brief 5:8-18.) Plaintiff contends that her limited work activities tended to show that she could not sustain regular 8 hour work days or 40 hour work weeks. (Pl.'s Opening Brief 5:15-18.)

At the first step of the five-step sequential evaluation process, the ALJ must determine whether the claimant is performing substantial gainful activity. Byington v. Chater, 76 F.3d 246, 248 (9th Cir. 1996). "The concept of substantial gainful activity involves the amount of

compensation and the substantiality and gainfulness of the activity itself." Keyes v. Sullivan, 894 F.2d 1053, 1056 (9th Cir. 1990). "[T]here is a presumption of substantial gainful employment if the applicant earns over the amount specified in the guidelines." Id.

In this case, Plaintiff alleged disability beginning on November 1, 2005. (AR 12.) However, the ALJ determined that Plaintiff's average monthly earnings in the second half of 2005 was $915. (AR 14.) Since earnings over $830 per month in 2005 created a presumption of substantial gainful activity, the ALJ found that Plaintiff was not disabled in November and December 2005. (AR 14.)

Plaintiff's argument appears to be premised on the incorrect assertion that the ALJ "did not specify the time periods of [substantial gainful activities]." (Pl.'s Opening Brief 5:12-13.) This assertion is not accurate because the ALJ did specify the time period of substantial gainful activity. The ALJ's written decision states that Plaintiff engaged in substantial gainful activity between November 2005 and December 2005. (AR 14.)

Plaintiff states that the ALJ found that Plaintiff was engaged in substantial gainful activity "during unspecified periods of 2007 and 2008." (Pl.'s Opening Brief 5:10-11.) This is also inaccurate. The only period of substantial gainful activity recognized by the ALJ was in November 2005 and December 2005, as stated in the ALJ's written decision. The ALJ cited bonuses Plaintiff earned from part-time work in January 2007 and 2008, but those bonuses were cited by ALJ to support her finding that Plaintiff's alleged limitations did not affect Plaintiff's work performance (since she was still capable of performing work at a level that qualified for bonuses) and that Plaintiff was not receiving special accommodations or "favors" from her employer. (AR 14-15.) The ALJ did not conclude that Plaintiff was engaged in substantial gainful activity in 2007 or 2008.

Plaintiff does not identify any error by the ALJ in assessing Plaintiff's period of substantial gainful activity in November and December 2005. Plaintiff's reply brief claims that Defendant made a "concession" resolves this issue in Plaintiff's favor, but Defendant made no concession with respect to the ALJ's findings pertaining to periods of substantial gainful activity in November and December 2005. Accordingly, the Court finds no error in the ALJ's

determination that Plaintiff was presumptively not disabled through 2005 due to her substantial gainful activity.

### B. The ALJ Did Not Err in Her Treatment of Dr. Dhillon's Medical Opinions

Plaintiff argues that the ALJ erred by giving insufficient reasons to reject Dr. Surinder P. Dhillon's medical opinions. (Pl.'s Opening Brief 5:19-6:13.) Plaintiff contends that the ALJ improperly rejected Dr. Dhillon's opinions on the grounds that they were contradicted by his treatment notes and by Dr. Song. Pl.'s Opening Brief 6:1-3.)

#### 1. Legal Standards Pertaining to Opinions of Treating Physicians

"By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007). "If a treating physician's opinion is 'well-supported ... and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." Id. Even if a treating physician's opinion is not given controlling weight, the opinion is still entitled to deference and the ALJ must consider specified factors in determining the weight it will be given, including (1) the length of the treatment relationship and the frequency of examination and (2) the nature and extent of the treatment relationship. Id. Additional factors relevant in evaluating the weight of any medical opinion, not just treating physician opinions, include: (3) the amount of relevant evidence that supports the opinion and the quality of the explanation provided, (4) the consistency of the medical opinion with the record as a whole, (5) the specialty of the physician providing the opinion, and (6) other factors such as the degree of understanding a physician has of Social Security disability programs and their evidentiary requirements and the physician's familiarity with other information in the record. Id.

If a treating physician's opinion is not contradicted by another doctor, it may only be rejected for clear and convincing reasons supported by substantial evidence. Id. at 632 (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). Even if the treating physician's opinion is contradicted by another doctor, it may not be rejected unless the ALJ provides specific and legitimate reasons supported by substantial evidence. Id. (quoting Reddick, 157 F.3d at 725). The conclusions of an examining physician cannot in and of itself constitute "substantial

9

evidence" to reject a treating physician's opinions if both opinions are based upon the same clinical findings. Id. However, if the examining physician provides independent clinical findings that differ from the findings of the treating physician, the examining physician's opinion may constitute substantial evidence to reject the treating physician's opinion. Id. (quoting Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985)).

### 2. The ALJ's Analysis of Dr. Dhillon's Opinions

The ALJ discounted the opinions of Dr. Dhillon expressed in a letter dated November 17, 2008. Dr. Dhillon stated that "[i]n [his] opinion, [Plaintiff] is a patient who has got multiple problems, continues to get worse, cannot work and needs to be on disability because of the situation."

The ALJ rejected Dr. Dhillon's opinion regarding Plaintiff's ability to work because "Dr Dhillon provides no insight into specific functional or work-related limitations the claimant might have" and "[h]is opinion regarding the severity of the claimant's medical conditions is inconsistent with the treatment record, and with the opinion of the Stanford specialist, Dr. Song, who recommended that the claimant stop taking some of her medications." (AR 22.) "It was also contradicted by the consultative internist and by the State agency medical consultants." (AR 22.)

A physician "may render opinions on the ultimate issue of disability--the claimant's ability to perform work." Reddick, 157 F.3d at 725. However, a physician's opinion on the ultimate issue of disability is not binding on an ALJ. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)) "[A]n ALJ may reject a treating physician's uncontradicted opinion on the ultimate issue of disability only with 'clear and convincing reasons supported by substantial evidence in the record," Holohan v. Massanari, 246 F.3d 1195, 1202-1203 (9th Cir. 2001). "If the treating physician's opinion on the issue of disability is controverted, the ALJ must still provide 'specific and legitimate reasons in order to reject the treating physician's opinion.'" Id.

The ALJ cited Dr. Dhillon's failure to provide "insight into specific functional or work-related limitations" as a basis to reject his opinion. "[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole..." Batson v.

10

Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ properly rejected Dr. Dhillon's opinion on the basis that it was conclusory and brief, and did not contain any discussion on Plaintiff's specific functional limitations and how those limitations affected her ability to perform work. Dr. Dhillon's letter does not cite any objective medical findings and appears to rely predominantly on Plaintiff's subjective complaints.

Further, Dr. Dhillon's findings were inconsistent with the findings of the other physicians. In contrast with Dr. Dhillon's description of Plaintiff, examining physican Dr. Stoltz described Plaintiff as "a well-developed, well-nourished, healthy-appearing female in no distress." (AR 437.) Dr. Stoltz also found Plaintiff to have "no back pain with knee extensions," noted that Plaintiff's range of motion on all extremities was within normal limits, and noted that her strength was "5/5 in all extremities." (AR 438.) In contrast, Dr. Dhillon's letter did not cite or discuss Plaintiff's range of motion or muscle strength.

Based upon the foregoing, the Court finds that the ALJ did not err in her treatment of Dr. Dhillon's opinions.

**C.    The ALJ Erred In Her Treatment of Dr. Stoltz's Medical Opinions**

Plaintiff argues that the ALJ erred by giving insufficient reasons to reject Dr. Stoltz's opinion that Plaintiff was limited to only occasional hand use. (Pl.'s Opening Brief 6:14-7:13.) The ALJ "gave some weight to the opinion of Dr. Stoltz, but did not adopt his limitation in hand usage, since this was inconsistent with the record." (AR 22.) Dr. Stoltz was a non-treating, examining physician.

"The opinion of an examining physician is ... entitled to greater weight than the opinion of a nonexamining physician." Lester v. Chater, 81 F.3d 821, 830 (citing Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990); Gallant v. Heckler, 753 F.2d 1450 (9th Cir. 1984)). "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31 (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)).

The non-examining physicians reviewing the record disagreed with Dr. Stoltz. Dr. Reddy wrote that there was no "need to limit simple grasping to any less than fre[]quent considering

1  minimal findings on CE [Dr. Stoltz's] exam.  Please note that the mild inflammation noted by CE
2  at MP joints was not present at 7/08 CE exam.  Moreover, CE noted normal strength and ROM."
3  (AR 449.)  Dr. Spellman affirmed Dr. Reddy's findings with little discussion. (AR 465.)  The
4  ALJ noted that Plaintiff suffered from "only slight joint inflammation in the extremities with no
5  obvious rheumatoid nodules or bony deformities" and that non-examining physicians "found no
6  objective evidence of acute synovitis or arthritis."  (AR 20-21.)

7  However, "[t]he opinion of a nonexamining physician cannot by itself constitute
8  substantial evidence that justifies the rejection of the opinion of ... an examining physician."
9  Lester, 81 F.3d at 831.  "The opinions of non-treating or non-examining physicians may ... serve
10 as substantial evidence when the opinions are consistent with independent clinical findings or
11 other evidence in the record."  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).
12 "Independent clinical findings can be either (1) diagnoses that differ from those offered by
13 another physician and that are supported by substantial evidence ... or (2) findings based on
14 objective medical tests that the ... physician has not ... considered." Orn v. Astrue, 495 F.3d 625,
15 632 (9th Cir. 2007).

16 The opinions of the nonexamining physicians do not constitute "substantial evidence" that
17 justifies the rejection of the opinion of Dr. Stoltz because they were not based upon independent
18 clinical findings. Lester, 81 F.3d at 831.  Dr. Stoltz, Dr. Reddy and Dr. Spellman all looked at the
19 same records and objective medical tests.  Dr. Stoltz's assessment is entitled to greater weight
20 because he examined Plaintiff personally.  The clinical test results cited by Dr. Reddy, Dr.
21 Spellman and the ALJ are tests results that were available to and considered by Dr. Stoltz.
22 Accordingly, the ALJ erred by rejecting Dr. Stoltz's opinion in favor of Dr. Reddy and Dr.
23 Spellman's opinions.

24 **D.     The ALJ's Use of the Grids**

25 Plaintiff argues that the ALJ erred because non-exertional impairments made the grids
26 inapplicable. (Pl.'s Opening Brief 7:14-8:8.)  In light of the Court's conclusions that the ALJ
27 erred in rejecting Dr. Stoltz's opinion, the Court need not address Plaintiff's argument with
28 respect to the applicability of the Grids.

### E. Remand For Further Administrative Proceedings

"Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id. "[T]he district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Id. (citing Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000)). When the ALJ fails to provide legally sufficient reasons for rejecting evidence, the Court must credit that evidence as true. Id. at 594.

In this case, the ALJ provided insufficient reasons to reject the opinion of Dr. Stoltz regarding Plaintiff's hand use. However, further administrative proceedings are necessary to determine whether Plaintiff would be found disabled even if Dr. Stoltz's opinion were credited as true. The VE was never asked whether a claimant could work with the limitations expressed in the residual functional capacity determined by the ALJ with the addition of the hand use limitation expressed by Dr. Stoltz.

Based upon the foregoing, the Court finds that remand for further administrative proceedings is appropriate.

### IV.

### CONCLUSION AND RECOMMENDATION

For the reasons set forth above, the Court finds that the ALJ erred in discrediting the medical opinions of Dr. Stoltz. However, further administrative proceedings are necessary to determine whether Plaintiff would be found disabled even accepting

Accordingly, it is HEREBY RECOMMENDED that:

1. Plaintiff's appeal from the final decision of Defendant Commissioner of Social Security be GRANTED;

2. That this case be remanded for further administrative proceedings; and

3. Judgment be entered in favor of Plaintiff Lavon Ortega and against Defendant Commissioner of Social Security.

These Findings and Recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **December 20, 2013**

UNITED STATES MAGISTRATE JUDGE